## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

_____

DONNA ANN GABRIELE CHECHELE,

        Plaintiff,

v.

TOM L. WARD,

        Defendant,

        – and –

SANDRIDGE ENERGY, INC.,

        Nominal Defendant.

_____

Case No. CIV-10-1286-M

**DEFENDANT TOM L. WARD'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE CONCERNING (I) IN-KIND "PREMIUM," (II) THE VALUE OF THE OCTOBER WARRANT OR PUT RIGHT, (III) HYPOTHETICAL OR INDIRECT TRANSACTIONAL BENEFITS, (IV) WARD'S TAX LOSSES OR RETURNS, AND (V) SECTION 16B-6(C)(2)**

        Defendant Tom L. Ward respectfully files this motion *in limine* and supporting memorandum of law requesting the Court enter an Order precluding Plaintiff, any witness appearing on her behalf, or her counsel from introducing any evidence or making any mention, innuendo, or interrogation, directly or indirectly in any manner whatsoever, concerning any of the following matters:

**1.     Ward's Alleged Receipt Of Any In-Kind "Premium"**

        Any evidence that Ward received any option "premium" recoverable under Section 16(b) should be excluded as not relevant in light of Plaintiff's representation that

"she is no longer seeking 'recovery of the cash values of the in-kind premiums Ward received from the October Warrant and sale of the Put Option.'" [Dkt. No. 135 (9/20/12 Order).] But Plaintiff's opposition to Ward's pending motion for summary judgment suggests that she may attempt to renew her claim for premium damages. Because Plaintiff has conceded that Ward should be afforded a full victory on the issue of any recoverable premium, the Court should preclude any attempts to resurrect this theory. *See Stallings v. Werner Enters., Inc.*, No. 07-1387-WEB, 2009 WL 1176387, at *3 (D. Kan. Apr. 28, 2009) (excluding as irrelevant any evidence relating to withdrawn contention); Fed. R. Evid. 402.

In addition to not being relevant, any evidence relating to any purportedly recoverable premium would be highly prejudicial to Ward. *See* Fed. R. Evid. 403. Ward has relied on Plaintiff's representations—to both Ward and the Court—that she would not assert any premium claims and would not attempt to dispute Ward's contention that he received no premium for any of the alleged options. Moreover, because Plaintiff withdrew her premium claims, the Court previously found it unnecessary to address the sufficiency of Plaintiff's Rule 26 disclosures and interrogatory responses on that issue. [Dkt. No. 135.] Thus, Plaintiff has never provided adequate information about the nature of her premium contentions or the evidence that she intended to rely upon. Allowing Plaintiff to revive this theory after the close of discovery and on the eve of trial would severely prejudice Ward. *See Unishippers Global Logistics, LLC v. DHL Express (USA), Inc.*, No. 2:08CV894 DAK, 2011 WL 2634628, at *4-5 (D. Utah July 5, 2011) (evidence relating to undisclosed damages claim must be excluded); *Stearns v. McGuire*, No.

2

Civ.02-RB-1912(OES), 2004 WL 3174425, at *1-2 (D. Colo. Sept. 23, 2004) (excluding damages claim where basis for computing damages was not disclosed and nature of claim not sufficiently clarified).

Moreover, as neither of Plaintiff's retained experts provided any opinion as to whether Ward received any premium or how any premium may be calculated, they should be precluded from testifying on these issues. *See* Fed. R. Civ. P. 26(a)(2); *see also Stallings*, 2009 WL 1176387, at *1 (excluding expert testimony—even if offered in rebuttal—because disclosures did not provide fair notice of substance of that testimony).

**2.      The "Value" Of The October Warrant Or Put Right**

Ward's potential Section 16(b) liability is limited to any "profit realized" from a specific purchase and sale transaction. 15 U.S.C. § 78p(b). Plaintiff should be precluded from introducing evidence not relevant to the "profit" that may be recovered under Section 16(b), including the "value" of an option. As a matter of law, Section 16(b) liability is determined by the actual price that a defendant paid or received, notwithstanding whether that price accurately reflects the "value" of the stock that was purchased or sold. *See, e.g.*, *Mueller v. Korholz*, 449 F.2d 82, 86-88 (7th Cir. 1971) (noting that the relevant purchase price under Section 16(b) may not necessarily reflect a "favorable bargain" to the defendant); *cf. Allis-Chalmers Mfg. Co. v. Gulf & W. Indus., Inc.*, 527 F.2d 335, 352-55 (7th Cir. 1975) ("sale price" determined by the tangible consideration received by the defendant for the stock sold, not the "value" of the stock itself). Consequently, the Court should preclude Plaintiff from presenting evidence of the value of the October Warrant or the Put Right as indicative of whether Ward received a

"premium" or "sale price" for those options.  *See, e.g.*, *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (evidence may be excluded under Rule 403 if it "suggests to the jury that it should 'render its findings on an improper basis'") (citation omitted).

The jury does not need to value the October Warrant or the Put Right to determine whether there is any "recoverable profit" from transactions involving those options under Rule 16b-6(d) *or* Rule 16b-6(c)(2).  Section 16(b) was crafted to *avoid* such intricate fact-finding, and Rule 16b-6 was even more specifically designed to avoid "'turning every case involving derivative instruments into a battle of the experts over competing models of option valuation.'"  *Segen v. Westcliff Capital Mgmt., LLC*, 299 F. Supp. 2d 262, 270 (S.D.N.Y. 2004) (citation omitted).  The relevant "sale price" or "premium" received by Ward for the October Warrant is straightforward and may be directly established by the transaction documents or by witness testimony about whether Ward received any tangible consideration for these options.  No application of an option valuation model, such as the Black-Scholes model, is required to calculate the "profit" potentially recoverable under Section 16(b) and Rule 16b-6.  *See, e.g.*, *id.* at 269 (rejecting theory of liability that would involve determining the "actual price" of a derivative security based on evidence introduced by "experts employing complex options-pricing methodologies such as the Black-Scholes model").

Moreover, any hypothetical probative value from evidence relating to the "value" of these options is substantially outweighed by nearly every danger enumerated in Rule 403, including confusion of the issues, misleading the jury, undue delay, and wasting time.  Presenting this evidence will require hours of expert testimony about

4

complex option valuation theories that involve obscure mathematical principles and dense equations that are not easily explained or understood.  This testimony would needlessly consume this Court's time and resources and "'sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue.'"  *Jordan*, 485 F.3d at 1218 (10th Cir. 2007) (citation omitted) (excluding evidence under Rule 403 if it suggests to the jury that it should render its findings on an improper basis); *see*, *e.g.*, *Edizone, L.C. v. Cloud Nine*, No. 1:04-CV-117 TS, 2008 U.S. Dist. LEXIS 41258, at *4 (D. Utah May 22, 2008); *cf. Higgins v. State Auto Prop. & Cas. Ins. Co.*, No. 11-CV-90-JHP-TLW, 2012 WL 2369007, at *2 (N.D. Okla. June 21, 2012) (excluding expert testimony that "is at best superfluous, and at worst, would serve to confuse the issues of this already complicated case").

Allowing this evidence could also unfairly prejudice Ward, because, as courts have recognized, the value ascribed to these options may be different from the sale price or premium that Ward actually received, which more directly dictates the extent of Ward's potential Section 16(b) liability.  *See generally United States v. Shigemura*, No. CR-09-91-C, 2009 WL 1490596, at *1 (W.D. Okla. May 26, 2009) (excluding evidence that was "not needed" and presented the risk of "unfair prejudice . . . undue delay [and] waste of time"); *Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1060 (8th Cir. 1995) (excluding evidence that presented a danger of wasting time and confusing the jury); *State Farm Mut. Auto. Ins. Co. v. Farm Bureau Mut. Ins. Co.*, No. 08-1375-WEB, 2010 WL 3155514, at *1 (D. Kan. Aug. 9, 2010) (excluding irrelevant and indirect evidence of facts that could be established by direct testimony).

3.      **Any Hypothetical or Indirect Transactional Benefits**

The "profit" potentially recoverable under Section 16(b) is limited to

tangible consideration received by a defendant in exchange for securities.  While that

"profit" can include the cancellation of an outstanding debt or obligation, it cannot

include losses that the defendant might have avoided as a result of the alleged purchase or

sale transactions.  *See S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*, 575 F.2d 1040, 1044

(2d Cir. 1978) (the avoidance of loss that could have been suffered on shares that were

sold is not a true "economic benefit," and does not constitute an "actual profit" subject to

Section 16(b)).  Plaintiff should be precluded from attempting to introduce any such

evidence as speculative, not relevant, and prejudicial.

There is no evidence that Ward "sold" the October Warrant or the Put Right

in exchange for the cancellation or modification of any outstanding obligation under the

terms of his transactions with Kaiser and CIT.  For example, there is no evidence that

Ward provided the October Warrant in exchange for any reduction of the interest rate he

was obligated to pay for the loan he obtained in October.  By the same token, the loans

extended to Ward in October and December were explicitly and exclusively provided in

exchange for the interest rate that Ward agreed to pay.  Similarly, the portion of Ward's

debt that was cancelled in December was explicitly attributed to the *stock* that Ward sold;

no amount of that cancelled debt can be attributed to the Put Right as a matter of law.

*See Morales v. Lukens, Inc.*, 593 F. Supp. 1209, 1215-16 (S.D.N.Y. 1984) (payment not

attributed to sale of stock not included in short-swing profits); *cf. Herrmann ex rel. Walt

Disney Prods. v. Steinberg*, 812 F.2d 63, 67 (2d Cir. 1987) (profit includes only payment

6

received "as consideration for [the alleged] sale"); *Reece Corp. v. Walco Nat'l Corp.*, 565 F. Supp. 158, 166 (S.D.N.Y. 1981) (refusing to "allocate any part of the price received" for stock to covenants provided by agreement).  Thus, any suggestion by Plaintiff that Ward avoided less favorable transaction terms or other economic consequences as a result of his alleged "sales" of the October Warrant or the Put Right would be inadmissible speculation, not relevant, and unfairly prejudicial to Ward because of its likelihood of misleading the jury.  *See, e.g.*, *Jordan*, 485 F.3d at 1218.

Additionally, Plaintiff has never indicated that either of her experts will testify about anything other than the "value" of the options.  Therefore, any evidence that Plaintiff would seek to introduce at trial regarding any other term of Ward's transactions with Kaiser or CIT would be untimely and should be excluded.  *See* Fed. R. Civ. P. 26(a); *e.g.*, *Aerotech Res., Inc. v. Dodson Aviation*, *Inc.*, 91 F. App'x 37, 45 (10th Cir. 2004) (upholding district court's exclusion of evidence not previously disclosed)*; accord United States v. Adams*, 271 F.3d 1236, 1243 (10th Cir. 2001) (testimony properly excluded because it was belatedly disclosed, did not provide a sufficient time to prepare a rebuttal, and was thus unfairly prejudicial); *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994) (upholding exclusion of testimony based on a "fail[ure] to detail prior to trial those issues [the witness] would testify about").

4.    **The Size of Ward's Tax Losses Or Refunds Or The Non-Production Of Ward's Tax Returns**

Plaintiff should be precluded from introducing any evidence relating to the size of any tax losses or refunds associated with the transactions as not relevant and

unduly prejudicial to Ward.  Likewise, the Court should also exclude any mention of the non-production of Ward's tax returns.

First, as a matter of well-settled law, the tax treatment of alleged short-swing transactions—including any tax benefits generated by the transactions—is not relevant to Section 16(b) "profit realized."  *See Rothenberg v. United Brands Co.,* No. 74 Civ. 5735, 1977 WL 1014, at *7 (S.D.N.Y. May 11, 1977) ("enormous tax savings" generated by alleged short-swing transactions irrelevant to Section 16(b) liability), *aff'd*, 573 F.2d 1295 (2d Cir. 1977); *S. & S. Realty Corp.*, 575 F.2d at 1043 ("amount received by [defendant] as reimbursement for [ ] tax liabilities" is not a Section 16(b) profit); *see also Segen v. CDR-Cookie Acquisitions, L.L.C.*, No. 05 Civ. 3509(RWS), 2006 WL 59550, at *2 (S.D.N.Y. Jan. 4, 2006) (tax treatment of acquired shares irrelevant to Section 16(b) profit calculation).  Thus, Plaintiff should be precluded from offering evidence concerning Ward's taxes or referencing the size of any tax losses or returns to Ward.  See Fed. R. Evid. 402.

Setting aside, for the sake of argument, that the size of Ward's tax losses or refund has no probative value, this Court should still exclude any evidence regarding the topic as a prejudicial distraction to the jury under Rule 403.  Given Ward's sophisticated business dealings and substantial net worth, the size of tax losses he has claimed or tax refunds he has received may be remarkable to the jury.  Thus, even if there was some marginal relevance, that evidence could be unduly prejudicial to Ward.  *See EEOC v. Roswell Radio, Inc.*, No. CIV-06-253 JB/LAM, 2007 U.S. Dist. LEXIS 56498, at *7 (D.N.M. June 12, 2007) (finding that only possible purpose for evidence not relevant to

any elements of Plaintiff's claim was to cause unfair prejudice); *cf. Aerotech Resources*,
91 F. App'x at 46 (excluding "marginally relevant" evidence that could prejudice and
confuse the jury).

This preclusion should extend to any witness testifying on Plaintiff's behalf,
including her retained rebuttal expert witness, Dr. Joseph Mason.  In his rebuttal expert
report, Dr. Mason did not offer any opinion regarding any purported economic benefit to
Ward from any tax benefit but attempted to reserve his right to supplement his report on
this issue.  As of the close of discovery and the filing of this motion, Dr. Mason had not
done so.  Thus, in addition to not being relevant and potentially confusing to the jury, any
testimony offered by Dr. Mason on this issue should be excluded as untimely and
undisclosed expert opinion pursuant to Federal Rule of Civil Procedure 26(a)(2).

Likewise, Dr. Mason and Plaintiff's counsel should be precluded from
testifying, mentioning, insinuating, or otherwise commenting that Ward did not produce
his tax returns.  Plaintiff never filed a motion to compel Ward to produce these
documents or otherwise pursued the issue.  To allow Plaintiff, any witness appearing on
her behalf, or her counsel to suggest that Ward's behavior in not producing those
documents was improper would severely prejudice Ward.

## 5.     Evidence Related To Rule 16b-6(c)(2)

### (a)     Rule 16b-6(c)(2) Is Not Relevant

Plaintiff's claim is predicated on options that Ward allegedly wrote that
were cancelled or expired within six months.  Because Rule 16b-6(d) governs those
transactions and Rule 16b-6(c)(2) cannot be applied in this case, Plaintiff's arguments

and evidence concerning the calculation of profit under Rule 16b-6(c)(2) are not relevant and should be excluded.  *See* Fed. R. Evid. 402; *e.g.*, *United States v. DeChristopher*, -- F.3d --, 2012 WL 4040268, at *9 (10th Cir. Sept. 14, 2012) (district court properly excluded evidence regarding laws and regulations not relevant to defendant's alleged conduct).

Because the October Warrant was cancelled and the Put Right expired within six months of Ward's alleged writing of those options, Rule 16b-6(d) governs the "matching" of these options, and encompasses "any profit . . . recoverable" under Section 16(b).  *See* 17 C.F.R. § 240.16b-6; *see also Allaire Corp. v. Okumus*, 433 F.3d 248, 254 (2d Cir. 2006) (option expiration must be "matched" with "its own writing" under Rule 16b-6(d)); *accord Roth v. Goldman Sachs Grp., Inc.*, No. 11 Civ. 4820(JPO), 2012 WL 2006021, at *8 (S.D.N.Y. June 5, 2012).  Rule 16b-6(c)(2) has no application to either the writing of the October Warrant or the writing of the Put Right, and Plaintiff should be precluded from suggesting that it does.

It is even more clear that Rule 16b-6(d) governs the "cancellation of an option" written by an insider; and thus, that Rule 16b-6(c)(2) cannot apply to the cancellation of the October Warrant.  17 C.F.R. § 240.16b-6(d); *see also Allaire*, 433 F.3d at 253 n.5 (Rule 16b-6(c)(2) does not apply "where an option's expiration is one half of the transaction pair in question").  It makes no difference that Plaintiff claims Ward may have provided "value" to cancel the October Warrant.  Rule 16b-6(d) explicitly provides for distinct treatment of cancellations for value only where the option is *held* by an insider (i.e., "long derivative security positions")—and plainly applies

10

equally and without such a qualification "[u]pon cancellation *or* expiration of an option"
*written* by an insider.  17 C.F.R. § 240.16b-6(d) (emphasis added).  Any attempt by
Plaintiff to introduce evidence relating to the application of Rule 16b-6(c)(2) to the
cancellation of the October Warrant should be excluded as not relevant.

      (b)      Plaintiff's Rule 16b-6(c)(2) Theory Was Not Fairly Disclosed

      Even if Rule 16b-6(c)(2) could conceivably apply to these transactions,
Plaintiff's attempt to introduce evidence relating to its application would unjustly
prejudice Ward.  Throughout discovery, Ward asked Plaintiff to identify and explain how
she would calculate the profit from each specific "match" under Rule 16b-6(c)(2).
Plaintiff resisted disclosing this basic information by professing that the particular way in
which the transactions were matched was unimportant.  Plaintiff's insincerity—and her
*own understanding* that the application of Rule 16b-6(c)(2) depends upon *which* alleged
"purchase" is matched with *which* alleged "sale"—was exposed when she notified Ward,
on the eve of the summary judgment deadline, that she would change precisely this
aspect of her Rule 16b-6(c)(2) claim.

      Plaintiff's conduct in this case highlights the reason why she was required,
at the outset of discovery, to disclose the *basis* for, and not just the *amount* of her
damages calculations.  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii).  Plaintiff's improper
withholding of, and even more improper last-minute changes to, her contentions
prevented Ward from obtaining full disclosure of either her original *or* substituted
matching theory.  By the time Plaintiff responded to Ward's requests for admission (three
days late, and after the close of discovery)—that were addressed to her belated disclosure

of the transactions she intended to match—Plaintiff had adopted entirely different Rule

16b-6(c)(2) claims and tersely denied all of Ward's requests.  Plaintiff's failure to provide

fair notice to Ward of her Rule 16b-6(c)(2) contentions should result in the preclusion of

any evidence supporting her claim for Rule 16b-6(c)(2) damages.  *See Koch v. Koch*

*Indus., Inc.*, 6 F. Supp. 2d 1192, 1206-07 (D. Kan. 1998) (excluding damages theory that

was unfairly disclosed because defendant did not have adequate opportunity to challenge

assumptions and proposed calculations).

     (c)     Evidence Regarding Rule 16b-6(c)(2) Would Be Unduly Time-Consuming
and Confusing

     As is evident from Plaintiff's lengthy discussion of Rule 16b-6(c)(2) in her

summary judgment motion, its application is not necessarily straightforward.  For

example, the "Alternative Method" contemplates the analysis of a hypothetical

transaction that Plaintiff proposes to undertake by presenting dense and lengthy expert

testimony (which may require rebuttal testimony) regarding complex option valuation

methods.  This is the exact type of obscure fact-finding that Rule 16b-6(c)(2) was

specifically designed to prevent.  *See Segen*, 299 F. Supp.2d at 270 (Rule was meant to

avoid "'turning every case involving derivative instruments into a battle of the experts

over competing models of option valuation'" (citation omitted)).  Plaintiff's convoluted

attempt to apply Rule 16b-6(c)(2) to these transactions is misguided, and the expert

evidence she seeks to present should be excluded, as it does not determine Ward's

liability in this case.  *See Petersen v. Daimler Chrysler Corp.*, No. 1:06-CV-108-TC,

2011 WL 1706469, at *1-2 (D. Utah May 4, 2011) (excluding expert testimony not necessarily relevant to dispositive issues).

Further, any probative value that could be gained from educating the jury on option valuation, determining the proper method for valuing the options, computing those values under that method, and finally, debating how those values are to be inputted into the "Alternative Method" prescribed by Rule 16b-6(c)(2)—which neither party contends actually governs the recoverable profit in this case—is substantially outweighed by the danger of confusing the issues, undue delay, and wasting time. *See* Fed. R. Evid. 403; *United States v. Allerheiligen*, 221 F.3d 1353, at *13 (10th Cir. 2000) (unpublished table decision) (upholding exclusion of "marginally relevant" evidence that would be cumulative and "inject collateral issues at trial that would confuse and mislead the jury"); *accord United States v. Guardia*, 955 F. Supp. 115, 119-20 (D.N.M. 1997) (excluding testimony that "will likely confuse the jury on peripheral issues" and require additional expert testimony to evaluate), *aff'd*, 135 F.3d 1326 (10th Cir. 1998).

(d)    Alternatively, Any Option Valuation Evidence Should Be Limited in Scope and Purpose

Plaintiff's voluminous and complex expert testimony on option valuation is only relevant only if the Rule 16b-6(c)(2) Alternative Method is applied to match the writing of the October Warrant with the writing of the Put Right. Consequently, any evidence on this topic should be limited in scope. Plaintiff's proposed calculation involves comparing an actual transaction (the sale of the October Warrant) with a hypothetical transaction (a purchase of the October Warrant on the date of the matched

transaction).  To calculate the profit, the *actual sale price* (i.e., the premium) that Ward received for selling the October Warrant is used as the "sale price."  The *value* of the October Warrant is only relevant to determine the hypothetical "*purchase price*" on the date of the matched "purchase."

The only option value potentially relevant to this method is the value of the October Warrant on December 31, 2008 (the date of the proposed matched "purchase"), and that should be the only scope of Plaintiff's expert testimony on the issue.  Plaintiff should not be permitted to waste the time of the Court and the jury with needless (and needlessly complex) evidence regarding any other option value.  *See Leger v. Williams Natural Gas Co.*, No. 92-1547-FGT, 1996 WL 137832, at *1 (D. Kan. Mar. 12, 1996) (excluding expert testimony not relevant to the "remaining elements of damages" to be determined); *accord Fox v. Mazda Corp. of Am.*, 868 F.2d 1190, 1193-94 (10th Cir. 1989) (expert evidence on damages limited to issues relevant to calculation of liability).  Further, the only purpose for which that appropriately limited testimony should be admitted is to identify the "purchase price" that could be used in Plaintiff's proposed Alternative Method calculations.

(e)     The Purchase & Sale Agreement Price May Not Be Used Under the Ceiling Method

The "Ceiling Method" prescribed by Rule 16b-6(c)(2) provides for the calculation of the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase.  Plaintiff indicated that she will argue that $5.62 should be used as the price of the underlying security on the date of both purchases, or

December 31, 2008.  But the price of the underlying SandRidge stock was never $5.62 at any time on that day, and Plaintiff should not be allowed to present such a demonstrably false assertion to improperly inflate the maximum "Ceiling Method" calculation.

That the Purchase & Sale Agreement reflecting a price of $5.62 per share was executed "contemporaneously" with the two alleged "purchases" has no bearing on the application of the Rule 16b-6(c)(2).  The only contemporaneous price that could be relevant to the Ceiling Method is the contemporaneous *trading* price of the underlying security.   The Purchase & Sale Agreement was privately negotiated and did not reflect the trading price of SandRidge stock at the time or date of its execution.  Thus, any reference to that Agreement in connection with Plaintiff's proposed computation of profit under the Ceiling Method should be excluded as not relevant, confusing and potentially prejudicial.  *See, e.g.*, *Jordan*, 485 F.3d at 1218 (evidence should be excluded where it "suggests to the jury that it should 'render its findings on an improper basis'" (citation omitted)).

Respectfully submitted,

/s/ *Robert E. Zimet*

| | |
|---|---|
| M. Richard Mullins, OBA # 13329 | Robert E. Zimet, *pro hac vice* |
| McAFEE & TAFT | John Boyle, *pro hac vice* |
|    A PROFESSIONAL CORPORATION | Miriam Tauber, *pro hac vice* |
| 10th Floor, Two Leadership Square | SKADDEN, ARPS, SLATE, |
| 211 North Robinson Avenue |    MEAGHER & FLOM LLP |
| Oklahoma City, OK 73102 | Four Times Square |
| Phone: (405) 235-9621 | New York, New York 10036 |
| Fax: (405) 235-7632 | Phone: (212) 735-3000 |
| E-mail: richard.mullins@mcafeetaft.com | Fax: (212) 735-2000 |
| | E-mail: robert.zimet@skadden.com |

*Attorneys for Defendant Tom L. Ward*